**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:20-cv-10621-AJN** |
| **ON DECK CAPITAL, INC., ENOVA** | ) | |
| **INTERNATIONAL, INC., and** | ) | |
| **JOHN/JANE DOES 1-5,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

---

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

Stephen J. Steinlight, Esq.
875 Third Avenue
New York, NY 10022
Telephone: (212) 704-6067
Stephen.Steinlight@Troutman.com

*Attorneys for Defendants On Deck
Capital, Inc. and Enova
International, Inc.*

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................ 1

  A.    The Court should dismiss Count I for lack of subject matter jurisdiction. ............ 1

  B.    The Court should dismiss Counts II and III for failure to state a claim. ............... 3

II.   RELEVANT FACTS ....................................................................................... 3

III.  DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION .......... 4

  A.    Standard governing motions to dismiss under Rule 12(b)(1). ............................. 4

  B.    In AAPC, the Supreme Court Held that 47 U.S.C. § 227(b)(1)(A)(iii) with the Government-Debt Exception is Unconstitutional. .......................................... 6

IV.   ARGUMENT AS TO COUNT I ........................................................................ 9

  A.    The Court lacks subject matter jurisdiction over Plaintiff's claim because the violation of an unconstitutional law is not judicially cognizable .................... 9

  B.    Severance does not provide a remedy to retroactively cure the Unconstitutionality of the TCPA's automated-call restriction. .......................... 11

     1.    Severance of the government debt exception only applies prospectively. .......................................................................... 11

     2.    Footnote 12 in AAPC does not change this analysis. ............................. 14

     3.    Applying the automated-call restriction to the calls at issue would lead to the same constitutional problems that AAPC was designed to avoid.................................................................................. 16

V.    DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ............................. 18

  A.    Standard governing motions to dismiss for failure to state a claim. ................... 18

  B.    Count II fails to state a claim because Plaintiff does not allege conduct within the purview of the regulation. ................................................. 18

  C.    Count III fails to state a claim because it rises and falls with Plaintiff's TCPA claim and Plaintiff fails to plead all elements of the claim..................... 20

     1.    Count III should be dismissed because it is wholly dependent on Plaintiff's TCPA claim. ......................................................... 20

     2.    Plaintiff has not pled the elements of a Texas TCPA claim. .................. 21

VI.   CONCLUSION............................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen Oil Co., Inc. v. Comm'r*,
  614 F.2d 336 (2d Cir. 1980)...................................................................19

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011)....................................................................5

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  953 F.3d 760 (Fed. Cir. 2020) (O'Malley, J., concurring) ...........................8, 12, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................18

*Assoc. Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)..............................................................................18

*Bailey v. Domino's Pizza, LLC*,
  867 F. Supp. 2d 835 (E.D. La. 2012) .......................................................20

*Barr v. American Association of Political Consultants, Inc.*,
  140 S. Ct. 2335 (2020)................................................................... *passim*

*Cherkaoui v. Santander Consumer USA, Inc.*,
  32 F. Supp. 3d 811 (S.D. Tex. 2014) .......................................................21

*Collins v. Fischer*,
  No. 15-cv-103, 2018 U.S. Dist. LEXIS 54722 (S.D.N.Y. Mar. 29, 2018)............18

*Creasy v. Charter Commn's Inc.*,
  No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sept. 28, 2020)..... *passim*

*Cunningham v. Enagic USA, Inc.*,
  No. 3:15-0847 ..................................................................................20

*Cunningham v. Politi*,
  No. 4:18-cv-00362, 2019 U.S. Dist. LEXIS 102449 (E.D. Tex. Apr. 30, 2019)..........19

*Cunningham v. Rapid Capital Funding, LLC*,
  No. 3:16-02629, 2017 U.S. Dist. LEXIS 136951 (M.D. Tenn. July 27, 2017) ......20

*Cunningham v. Rapid Response Monitoring Servs.*,
  251 F. Supp. 3d 1187 (M.D. Tenn. 2017)..................................................3

*Cunningham v Spectrum Tax Relief, LLC*,
  No. 3:16-2283, 2017 U.S. Dist. LEXIS 118797 (M.D. Tenn. July 7, 2017) .........................20

*Cunningham v. Sunshine Consulting Grp., LLC*,
  No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709 (M.D. Tenn. July 20, 2018) ........................19

*Doe v. Smith*,
  No. 98-cv-6600, 2001 U.S. Dist. LEXIS 24974 (E.D.N.Y. Jan. 12, 2001) .............................5

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007)...............................................................................................18

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)...................................................................................................11, 13

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
  No. 5:20-cv-38-Oc-30PRL, __F. Supp. 3d __, 2020 U.S. Dist. LEXIS 236577
  (M.D. Fla. Dec. 11, 2020)..............................................................................................9, 14

*Less v. Quest Diagnostics, Inc.*,
  No. 3:20cv2546, 2021 U.S. Dist. LEXIS 14320 (N.D. Ohio. Jan. 26, 2021)...........................9

*Lindenbaum v. Realgy*, LLC,
  1:19cv2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020) ...................... *passim*

*Lyons v. Litton Loan Servicing, LP*,
  158 F. Supp. 3d 211 (S.D.N.Y. 2016)...................................................................................4

*Marbury v. Madison*,
  5 U.S. 137 (1803)..............................................................................................................1

*Martin v. Prof'l Staff Con. Local 2334*,
  423 F. Supp. 3d 367 (S.D.N.Y. 2020)...............................................................................4, 5

*Masters v. Wells Fargo Bank S. Cent., N.A.*,
  No. A-12-CA376, 2013 U.S. Dist. LEXIS 101171 (W.D. Tex. July 11, 2013) .....................21

*Montgomery v. Louisiana*,
  136 S. Ct. 718 (2016)........................................................................................................10

*Morgan v. On Deck Capital Inc.*
  (W.D. Va., No. 3:17-cv-00045) .......................................................................................3, 4

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................................18

*Reynoldsville Casket Co. v. Hyde*,
  514 U.S. 749 (1995) (Scalia, J., concurring) ..................................................................10, 15

*SEC v. Med. Comm. For Human Rights*,
　404 U.S. 403 (1972) ................................................................................5

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
　140 S. Ct. 2183 (2020) ....................................................................12, 15

*Sessions v. Morales-Santana*,
　137 S. Ct. 1678, 198 L. Ed.2d 150 (2017) ...........................................13

*United States v. Baucum*,
　80 F.3d 539 (D.C. Cir. 1996) (per curiam) ............................................5

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ...........................................................1, 6, 8, 11

47 U.S.C. § 227(b)(1)(A) of the Telephone Consumer Protection Act ...........................................1

*Seila Law* ...........................................................................................11, 12, 15

TCPA ............................................................................................... *passim*

Texas Business and Commerce Code Section 305.001 ....................................21

Texas Business and Commerce Code § 305.053 .........................................3, 4, 20, 21

**Other Authorities**

47 C.F.R. § 64.1200(d) ...................................................................... *passim*

First Amendment ................................................................................ *passim*

Fed. R. Civ. P. 5.1(a) .................................................................................2

Federal Rule of Civil Procedure 5.1 ........................................................2

Rule 12(b)(1) ..............................................................................................4

Rule 12(b)(6) ............................................................................................18

U.S. Const. Art. III, 2 ...............................................................................5

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants On Deck Capital, Inc. ("OnDeck") and Enova International, Inc. ("Enova" and collectively, "Defendants"), through counsel, submit this Memorandum of Law in Support of their Motion to Dismiss.   As discussed below, the Court should dismiss Craig Cunningham's ("Plaintiff") Complaint for lack of subject matter jurisdiction and for failure to state a claim.

## I.   INTRODUCTION

In Plaintiff's Complaint, he brings three claims that are all premised on the same alleged telephone calls.   In Count I, Plaintiff seeks to hold Defendants liable under 47 U.S.C. § 227(b)(1)(A) of the Telephone Consumer Protection Act ("TCPA") for alleged calls to Plaintiff's cellular telephone without prior express consent.   In Count II, Plaintiff seeks to hold Defendants liable for those same alleged calls under the TCPA's associated telemarketing regulations.   And, in Count III, Plaintiff seeks to hold Defendants liable for those same calls under Texas state law. The Court should dismiss each of Plaintiff's claims for separate reasons.   First, it should dismiss Count I for lack of subject matter jurisdiction – the TCPA provision at issue was unconstitutional at the time of the calls at issue.   Second, it should dismiss Counts II and III for failure to state a claim upon which relief may be granted.

### A.   The Court should dismiss Count I for lack of subject matter jurisdiction.

Since the Supreme Court decided *Marbury v. Madison*, 5 U.S. 137, 138 (1803), it has been a fundamental principle that an unconstitutional law is unenforceable.   Yet, here, Plaintiff is seeking to hold Defendants liable for alleged violations of a law that the Supreme Court has already held was unconstitutional during the time of the acts at issue.   In other words, Plaintiff seeks a result that is contrary to the Supreme Court's long-standing principles.

Specifically, Plaintiff claims that calls Defendants allegedly made to his cellular telephone violated § 227(b)(1)(A)(iii) of the TCPA – often known as the "automated-call restriction."   Less

than a year ago, however, the Supreme Court held that the automated-call restriction was unconstitutional during the time of the alleged calls at issue. Specifically, in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (hereinafter "*AAPC*"),[1] the Supreme Court held that the automated-call restriction, while paired with the "government-debt exception," was an unconstitutional content-based restriction that violated the First Amendment. Put another way, the automated-call restriction was unconstitutional, and, therefore, unenforceable, from the date of enactment of the government-debt exception in 2015 until the Supreme Court severed the exception in *AAPC*. That period covers *all* the alleged calls at issue in this case. Accordingly, Plaintiff's TCPA claim alleges a violation of an unconstitutional statute. This is fatal to his claim.

Further, although the Supreme Court severed the government-debt exception in *AAPC*, the act of severance has no impact on this case. The fact that the Supreme Court chose to save the automated-call restriction by severing the government-debt exception – so that the call ban can *now* be enforced – does not change the fact that the *entire* provision was unconstitutional at the time of the communications in question. Severance operates as a *prospective* fix only. It does not make the automated-call restriction retroactively enforceable against Defendants. Indeed, several district courts that have addressed this issue have concluded that the automated-call restriction was unconstitutional between 2015 and the decision in *AAPC*, which deprives them of subject matter jurisdiction to enforce the provision. The law compels this Court to reach the same result here.

---

[1]     Because the Supreme Court decided the constitutional challenge to the automated-call restriction in *AAPC*, Federal Rule of Civil Procedure 5.1 does not apply and no "notice of constitutional question" is required. *See* Fed. R. Civ. P. 5.1(a).

**B.     The Court should dismiss Counts II and III for failure to state a claim.**

The Court should also dismiss the remaining two claims in Plaintiff's Complaint, but for failure to state a claim, rather than the inability of the Court to exercise subject matter jurisdiction. Plaintiff claims that Defendants violated 47 C.F.R. § 64.1200(d), yet this provision relates to residential call subscribers, which Plaintiff affirmatively states in the Complaint that he is *not*. Moreover, Texas Business and Commerce Code § 305.053, which Plaintiff claims Defendants violated, incorporates the TCPA and is dependent completely upon the federal statute.  Where a plaintiff does not have a TCPA claim, he or she does not have a claim under § 305.053, either.

These deficiencies are fatal.  And Plaintiff cannot remedy them through an amendment. Accordingly, the Court should dismiss Plaintiff's claims in in Count I in their entirety and in Counts II and III, with prejudice.

## II.   RELEVANT FACTS

Plaintiff is a serial filer of TCPA claims.  *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1191 (M.D. Tenn. 2017) ("This Court's docket shows that Cunningham is a serial plaintiff in cases involving unsolicited telemarketing.").  His Complaint in this case is illustrative of his typical volume filings.  It is long on conclusory allegations that parrot the TCPA's framework, but short on substantive details regarding the calls at issue.  (ECF No. 1 at ¶¶ 23-33.)  Indeed, the lack of detail in the Complaint suggests that Plaintiff may not have even been aware of the calls that allegedly harmed him *years ago* until he received a notice of a class action settlement involving OnDeck.

 Specifically, in the Complaint, Plaintiff alleges that he is an opt-out of a TCPA class action that OnDeck settled in 2020, *Morgan v. On Deck Capital Inc.* (W.D. Va., No. 3:17-cv-00045) (ECF No. 1 at ¶ 23.)  According to Plaintiff, he received 53 calls to his cellular telephone number ending in -1977 from OnDeck.  (*Id.* at ¶¶ 23, 44.)  Other than stating that the "calls were not related

to an emergency purpose," (*id.* at ¶ 38), the allegations in the Complaint simply parrot the elements of a TCPA claim.  The Complaint does not offer any information about when Plaintiff allegedly received the calls, why he received the calls, or how he knew that "[e]ach call was sent by an ATDS."  (*Id.* at ¶ 33.)  Indeed, based on OnDeck's records, many of Plaintiff's allegations have absolutely no basis in fact.[2]  Nonetheless, Plaintiff brings a claim for violation of the TCPA (Count I), violation of 47 C.F.R. § 64.1200(d) (Count II), and violation of the Texas Business and Commerce Code § 305.053 (Count III).

OnDeck's records show that the first call made to the telephone number identified in Plaintiff's Complaint occurred on March 28, 2017.  Declaration of Hitesh Patel at ¶ 4, 5, attached as **Exhibit A**.  OnDeck's records further show that the last call made to the telephone number identified in Plaintiff's Complaint occurred on May 3, 2017.  Patel Decl. at ¶ 6.  OnDeck has no record of any calls to the -1977 number after that date.  Patel Decl. at ¶ 7.

## III.   DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A.   Standard governing motions to dismiss under Rule 12(b)(1).

Defendants move to dismiss Count I under Rule 12(b)(1) based on lack of subject matter jurisdiction.  Dismissal on this ground is appropriate when the court lacks statutory or constitutional authority to adjudicate a case.  *Lyons v. Litton Loan Servicing, LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Rule 12(b)(1) attacks on subject matter jurisdiction take on two forms: facial and factual. *Martin v. Prof'l Staff Con. Local 2334,* 423 F. Supp. 3d 367, 376 (S.D.N.Y. 2020) (citing *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016)).  When there is a facial attack, the

---

[2]      For example, Plaintiff's Complaint also alleges receipt of 83 text messages and a lawsuit Plaintiff previously filed against Defendants.  (ECF No. 1 at ¶ 37.)  The *Morgan* class action did not include any allegations of text messages to the putative class and there is no record of any previously-filed lawsuit against either Defendant by Plaintiff.

Court reviews the operative complaint to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his or her complaint are taken as true for the purposes of the motion. *Martin*, 432 F. Supp. 3d at 376 (citations omitted).

Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* at 376, 378. A factual attack on subject matter jurisdiction is an attack on the trial court's jurisdiction – its very power to hear the case. To oppose a factual attack to a pleading, a plaintiff "must come forward with evidence of their own to controvert that presented by the defendant" and can only rely on his or her pleadings "if the evidence proffered by the defendant is immaterial . . .." *Id.* at 376.

In the federal system, a district court only has subject matter jurisdiction over "cases" or "controversies." U.S. Const. Art. III, 2; *SEC v. Med. Comm. For Human Rights*, 404 U.S. 403, 407 (1972) (it is well-settled that federal courts may act only in the context of a justiciable case or controversy); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'"). A claim based on an unconstitutional law ceases to present a case or controversy. *See Doe v. Smith,* No. 98-cv-6600, 2001 U.S. Dist. LEXIS 24974, at *19 (E.D.N.Y. Jan. 12, 2001) ("A claim based on a law that the Supreme Court subsequently finds unconstitutional ceases to present a 'case or controversy' under Article III…."); *United States v. Baucum*, 80 F.3d 539, 541-42 (D.C. Cir. 1996) (per curiam) ("[O]nce a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]"). Accordingly, the Court lacks subject matter jurisdiction over a claim seeking to enforce an unconstitutional statute.

**B.      In AAPC, the Supreme Court Held that 47 U.S.C. § 227(b)(1)(A)(iii) with the Government-Debt Exception is Unconstitutional.**

In Count I, Plaintiff alleges a violation of the TCPA's automated-call restriction, 47 U.S.C. § 227(b)(1)(A)(iii).  In *AAPC*, the United States Supreme Court granted certiorari to address the constitutionality of this very provision.  In doing so, the Supreme Court concluded that § 227(b)(1)(A)(iii) was unconstitutional between 2015 and the date of the Court's July 6, 2020 decision in *AAPC*.  This is the precise time frame of the calls at issue in this case.

Specifically, as originally enacted in 1991, the TCPA's automated-call restriction "prohibited almost all robocalls to cell phones."  *AAPC*, 140 S. Ct. at 2344.  In 2015, however, Congress amended the provision by inserting the following exception in subparagraph (A)(iii): "unless such call is made solely to collect a debt owed to or guaranteed by the United States."  The effect of the so-called "government-debt exception" was to allow government debt collectors to make purported robocalls.  *Lindenbaum v. Realgy*, *LLC*, 1:19cv2862, 2020 U.S. Dist. LEXIS 201572, *4 (N.D. Ohio Oct. 29, 2020).

The plaintiffs in *AAPC* were organizations that were engaged in making "calls to citizens to discuss candidates and issues, solicit donations, conduct polls, and get out the vote." *AAPC*, 140 S. Ct. at 2345.  The plaintiffs wanted to make robocalls to cellular telephones for these purposes. *Id.*  As a result, they filed a declaratory judgment action against the United States Attorney General and the Federal Communications Commission, claiming that 47 U.S.C. § 227(b)(1)(A)(iii) was a content-based restriction that favored one form of speech over another, and, therefore, violated the First Amendment. *Id.*; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, *4.

The district court in *AAPC* held that the robocall restriction with the government-debt exception was a content-based regulation of speech, which triggered strict scrutiny.  The court determined, however, that the law survived strict scrutiny analysis.  *AAPC*, 140 S. Ct. at 2345.  On

appeal, the Fourth Circuit reversed, holding that the law could not withstand strict scrutiny.  *Id.*  The Fourth Circuit then determined that the government-debt exception was severable from the automated-call restriction. *Id.*  Faced with this result, the government petitioned the Supreme Court for a writ of certiorari.  *Id.*

When *AAPC* reached the Supreme Court, the Court issued what has been described as "a deeply fractured plurality opinion."  *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, *5.  In that opinion, the Supreme Court first held that "the robocall restriction with the government-debt exception is content based" and, therefore, subject to strict scrutiny.  *AAPC*, 140 S. Ct. at 2346-47 ("The initial First Amendment question is whether the robocall restriction with the government-debt exception, is content-based. The answer is yes.").  The Court also concluded that the provision could not survive strict scrutiny, rendering it unconstitutional.  Six justices agreed with this conclusion, making it binding precedent.  *Id.*, at 2343 ("Six Members of the Court today conclude that Congress has impermissible favored debt-collection speech over political and other speech, in violation of the First Amendment").  *See also Creasy v. Charter Commn's Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *8 (E.D. La. Sept. 28, 2020) (finding that, in such scenarios, the position taken by those members of the Court who concurred in the judgment on the narrowest grounds is the holding of the Court) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977)).

Next, the Supreme Court addressed whether the proper action was to sever the government-debt exception or, instead, invalidate the entire automated-call restriction.  The Supreme Court opted to rescue this TCPA provision prospectively by severing the government-debt exception.  *AAPC*, 140 S. Ct. at 2352-55.  But only three justices (Justices Kavanaugh, Roberts and Alito) agreed on the rationale for doing so, while four others simply concurred in the judgment.  *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, *6.  Justice Gorsuch dissented, with Justice Thomas

joining, on the basis that severance was not proper in the context of the case. *Id.*; *AAPC*, 140 S. Ct. at 2365-66 (Gorsuch, J., dissenting).

Critically, in reaching its decision in *AAPC*, the Supreme Court held that § 227(b)(1)(A)(iii), *in its entirety*, was unconstitutional from the date of the 2015 amendment creating the government-debt exception until the Court's July 6, 2020 decision severing the exception. Specifically, the Supreme Court held that the automated-call restriction with the government-debt exception failed strict scrutiny, meaning the entire provision violated the First Amendment from the date the government-debt exception was enacted in 2015. *AAPC*, 140 S. Ct. at 2343; *see also Creasy*, 2020 U.S. Dist. LEXIS 177798, at *10 ("As a majority of the Court held in AAPC, the 2015 amendment adding the government debt-exception to § 227(b)(1)(A)(iii) converted a theretofore neutral speech restriction into an invalid content-discriminatory one."). That ruling – that the automated-call restriction was unconstitutional from the 2015 enactment of the exception – applies to all pending cases, including this one. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767-68 (Fed. Cir. 2020) (O'Malley, J., concurring).

Since *AAPC*, several district courts have adopted the precise interpretation discussed above. Specifically, district courts in Louisiana, Ohio, and Florida have concluded that § 227(b)(1)(A)(iii), with the government-debt exception, was unconstitutional from the 2015 enactment of the exception until the Supreme Court severed the exception in *AAPC*. In turn, those courts held that a defendant could not be liable for allegedly violating the automated-call restriction for calls placed during that period. For example, in *Creasy*, the District Court for the Eastern District of Louisiana held as follows:

> In any event, the unconstitutional *amended* version of § 227(b)(1)(A)(iii) is what applied to Charter at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate Charter's liability with regard to such communications.

*Creasy*, 2020 U.S. Dist. LEXIS 177798, at *14-15.  In *Lindenbaum*, the court reached the same

conclusion, finding as follows:

> The fact remains that at the time the robocalls at issue in this lawsuit were made,
> the statute could not be enforced as written.
>
> …
>
> Because the statute at issue was unconstitutional at the time of the alleged
> violations, this Court lacks jurisdiction over this matter.

*Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18-20.  Similarly, in *Hussain v. Sullivan Buick-*

*Cadillac-GMC Truck, Inc.*, No. 5:20-cv-38-Oc-30PRL, __F. Supp. 3d __, 2020 U.S. Dist. LEXIS

236577, at *8 (M.D. Fla. Dec. 11, 2020), a District Court in the Middle District of Florida found

that "[t]he 2015 amendment, adding the government-debt exception, changed an otherwise valid

statute to an unconstitutional content-based restriction."  These courts similarly held that severance

of the government-debt exception *did not* apply retroactively to save the plaintiffs' claims in those

cases.  *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *13; *Lindenbaum*, 2020 U.S. Dist. LEXIS

201572, at *14-15; *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *8.[3]

    As discussed below, these cases lead to one inescapable conclusion:  The automated-call

restriction was unconstitutional during the time of the calls at issue in this case and, therefore, the

Court lacks subject matter jurisdiction over Plaintiff's claims stemming from those calls.

## IV.    ARGUMENT AS TO COUNT I

### A.    The Court lacks subject matter jurisdiction over Plaintiff's claim because the violation of an unconstitutional law is not judicially cognizable.

    Courts have repeatedly recognized that "[a]n unconstitutional law is void, and is no law."

*Creasy,* 2020 U.S. Dist. LEXIS 177798, at *12-13 (quoting *Ex parte Seibold*, 100 U.S. 371, 376

---

[3]    Defendants recognize that the District Courts have split on the impact of *AAPC* on the
TCPA.  *See, e.g. Less v. Quest Diagnostics, Inc.*, No. 3:20cv2546, 2021 U.S. Dist. LEXIS 14320,
at *2-3 (N.D. Ohio. Jan. 26, 2021).  Defendants believe the decisions finding the TCPA
unconstitutional during the time of the government-debt exception are the better reasoned
decisions.

(1879)); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 730-31 (2016) ("[W]hen a State enforces a proscription or penalty barred by the Constitution, the resulting conviction or sentence is, by definition, unlawful."); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-60 (1995) ("A court does not – in the nature of things it *can* not – give a 'remedy' for an unconstitutional statute, since an unconstitutional statue is not in itself a cognizable 'wrong.") (emphasis in original and citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803)) (Scalia, J., concurring).

As the Court in *Creasy* observed, this principle dictates that "*a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion.*"  *Creasy*, 2020 U.S. Dist. LEXIS 177798, * 7 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding that, even after an invalid time-place-manner restriction has been revised, the court must examine "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue)) (emphasis added).  It also means that "'once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce).'"  *Id.* at *7-8 (quoting *Baucum*, 80 F.3d at 541-42).

In this case, the allegedly violative calls all occurred between March and May 2017.  Patel Decl. at ¶¶ 4-7.  Thus, the only calls at issue occurred while the TCPA's automated-call restriction was unconstitutional – *i.e.* the time period between the 2015 amendment and when the Supreme Court restored the "constitutional muster of 227(b)(1)(A)(iii) by severing the government-debt exception in *AAPC*."  *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *10.  As a majority of the Court held in *AAPC*, "the 2015 amendment adding the government-debt exception converted a theretofore neutral speech restriction" into an unconstitutional content-discriminatory one.  *Id.* Because Defendants could not have violated an unconstitutional statute, this Court cannot provide a remedy and, in turn, there is no cognizable and justiciable federal question. *Id.*, at *14 (holding

that because the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to defendant at the time of the communications at issue, the court lacks subject matter jurisdiction to adjudicate the defendant's liability).

In sum, a federal court has no jurisdiction over a claim based on an unconstitutional law and it cannot impose liability in a discriminatory manner that violates the First Amendment. *Id.*; *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *20 ("Because the statute at issue [§ 227(b)(1)(A)(iii)] was unconstitutional at the time of the alleged violations, the court lacks jurisdiction over this matter."); *Grayned*, 408 U.S. at 107 (a court may not impose liability for speech that allegedly violates an unconstitutional statute).  Because this Court has no subject matter jurisdiction over Plaintiff's TCPA claim, the Court must dismiss Count I.

### B. Severance does not provide a remedy to retroactively cure the Unconstitutionality of the TCPA's automated-call restriction.

#### 1. Severance of the government debt exception only applies prospectively.

In *AAPC*, the Supreme Court did not have before it – and did not address – whether severance of the government-debt exception applies retroactively to pending cases – *i.e.,* whether the newly "fixed" statutory provision applies retroactively to calls that occurred before severance. Because *AAPC* involved a facial challenge, there was no pending claim under § 227(b)(1)(A)(iii), and the parties did not brief the issue.  Nevertheless, Supreme Court precedent dictates that severance does *not* apply retroactively in this context.  In other words, severance does not retroactively make an unconstitutional provision constitutional and, thereby, enforceable, *during the period in which the provision violated the Constitution*.  Severance applies only *prospectively*.

The Supreme Court recently addressed this issue in *Seila Law*, where the same three-justice plurality that decided *AAPC* (Justices Kavanaugh, Alito, and Roberts) recognized that unconstitutional laws are *unenforceable* during the period they are unconstitutional, even if later

cured through severance.  *See Seila Law LLC v. Consumer Fin. Prot. Bureau,* 140 S. Ct. 2183,

2208-09 (2020).  In *Seila Law*, the Supreme Court concluded that Congress violated constitutional

separation of powers principles when it established a single independent Director of the Consumer

Financial Protection Bureau ("CFPB").  *Id.* at 2207.  After reaching that conclusion – in order to

save the statute's constitutionality – the plurality opted to sever the provision protecting the

Director from removal by the President.  *Id.* at 2207-08.  But, in doing so, the plurality recognized

that actions taken when the CFPB's leadership structure was unconstitutional were invalid unless

the Director subsequently ratified the action after the statute was rendered constitutional.  *Id.* at

2211 (remanding to determine whether the civil investigative demand at issue was validly ratified).

Accordingly, the plurality recognized that severance could make a statute constitutional

*prospectively*, but it does not cure a constitutional infirmity *retroactively*.  If the opposite were

true, there would have been no need for the CFPB Director to re-affirm actions that occurred at a

time when the statute was unconstitutional.

This principle – that severance does not make a statute constitutional retroactively – makes

sense.  It is well-settled that "[a]n unconstitutional law is void, and is no law."  *Creasy,* 2020 U.S.

Dist. LEXIS 177798.  While severance can restore the constitutionality of a statute going forward,

it cannot "un-void" a provision retroactively.  In fact, many courts have reached the same

conclusion.  For example, in a recent concurrence, Judge O'Malley of the D.C. Circuit Court of

Appeals recognized the following:

> Our decision that the statute can be *rendered* constitutional by severance does not
> remedy any past harm—it only avoids continuing harm in the future.  It is only
> meaningful prospectively, once severance has occurred.

*Arthrex*, 953 F.3d at 767 (O'Malley, J., concurring) (emphasis in original).  This is consistent with

the Supreme Court's guidance that, when assessing the enforceability of a law in the face of a

constitutional challenge, the Court must "must consider the facial constitutionality of the ordinance

in effect when appellant was arrested and convicted," even if the law is subsequently "amended" after the fact. *Grayned*, 408 U.S. at 107. *See also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 198 L. Ed.2d 150, 173n. 24 (2017) ("[a] defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to manner in which the legislature might subsequently cure the infirmity.").

Indeed, based on these principles, the district court in *Lindenbaum* addressed head on whether the Supreme Court's severance of the government-debt exception retroactively rendered the automated-call restriction constitutional between 2015 and the decision in *AAPC*. The court held that it *did not*. According to the *Lindenbaum* court, there was "little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception." *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12. In the words of the court, the "insertion of the government-debt exception transformed [a] valid time, place, and manner restriction into an unconstitutional content-based restriction." *Id.* at *19. Even though the Supreme Court severed the government-debt exception, it cannot "wave a magic wand and make that constitutional violation disappear" through retroactive application of severance. *Id.* at *20.

Accordingly, although the Supreme Court severed the government-debt exception in *AAPC*, that does not render the statute constitutional during the period that the exception existed. The decision only applies prospectively. To find otherwise would run afoul of the well-settled principle that an unconstitutional law is no law. *See Creasy,* 2020 U.S. Dist. LEXIS 177798, at *12-13 (citations omitted). A provision that is "no law" can be remedied prospectively, but severance cannot erase the law's unconstitutional past.

### 2.    Footnote 12 in AAPC does not change this analysis.

Although precedent prevents the Court from enforcing a law that was unconstitutional at the time of the actions at issue, some have argued that footnote 12 in the plurality's opinion in *AAPC* changes this conclusion.  That argument is incorrect.

In *AAPC*, Justice Kavanaugh stated the following in a footnote when speaking for the three-Justice plurality.

> As the Government acknowledges, although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment on remand in this case, or such date that the lower courts determine is appropriate. [citation omitted]. *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*AAPC*, 140 S. Ct. at 2355, n.12 (emphasis added).  In *Creasy, Lindenbaum,* and *Hussain,* the plaintiffs argued that this footnote suggests that defendants can be held liable for calls that were placed while the automated-call restriction was unconstitutional.  And the district courts in those cases rejected this argument.  *See Creasy*, 2020 U.S. Dist. LEXIS 177798, at *9 (finding that the footnote does not affect the holding that the court lacks subject matter jurisdiction); *Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12 (same); *Hussain*, 2020 U.S. Dist. LEXIS 236577, at *5-6 (same).

As an initial matter, footnote 12 is dicta and, therefore, not binding on this Court.  *See id.* (footnote is non-binding dictum); *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *4 (referring to the footnote as "passing Supreme Court dicta of no precedential force").[4]  For that reason, it does not change the *holding* in *AAPC*, which the majority of Justices adopted, that the automated-call

---

[4]     As the court in *Creasy* observed, "Chief Justice Marshall remarked in *Cohens v. Virginia*, [that] where 'general expressions' in an opinion 'go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.'" 2020 U.S. Dist. LEXIS 177798, at *9 n.4 (citing *Cohens*, 19 U.S. (Wheat) 264 (1821)).

restriction with the government-debt exception was unconstitutional pre-severance (*i.e.*, from 2015 when the exception was enacted to the date the Supreme Court severed the exception). *AAPC*, 140 S. Ct. at 2343 ("Six Members of the Court today conclude that Congress has impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment.") And, as set forth above, the result of *AAPC's* holding – which is precedent binding this court – is that the automated-call restriction cannot be enforced against Defendants here.

Moreover, the footnote is most reasonably construed to refer to parties that have already been adjudged liable pursuant to the entry of a final judgment, not to *pending* cases.  In other words, the plurality did not intend to re-open cases of defendants whose liability has already been adjudicated, but it did not hold that defendants could be held liable in pending cases under a statute that was unconstitutional at the time of the acts in question.  This interpretation is consistent with prior Supreme Court precedent.  *See Reynoldsville Casket Co. v. Hyde,* 514 U.S. 749, 758 (1995) ("New legal principles, even when applied retroactively, do not apply to cases already closed."). *See also Arthrex,* 953 F. 3d at 767 ("O'Malley, J., concurring) ("[N]o one claims that our declaration [that the appointment of APJs ran afoul of the Constitution] would permit us to reopen closed cases decided under that unconstitutional structure.").

In fact, this is also the only construction of the footnote that makes the most sense in light of the Supreme Court's decision in *Seila Law*.  As discussed above, only a week before *AAPC*, the same three-Justice plurality recognized in *Seila Law* that unconstitutional laws are unenforceable during the period they are unconstitutional, even if later cured through severance.  *Seila Law LLC*, 140 S. Ct. at 2208-09.  *See also Arthrex*, 953 F.3d at 767 (O'Malley, J., concurring) (noting that, if the appointment of APJs ran afoul of the Constitution, that fact was true from the time of appointment forward).  It would make little sense for the plurality in *Seila Law* to conclude that

severance *does not* cure an unconstitutional statute retroactively and then, a week later, for that same plurality to hold in a passing footnote that severance *does cure* an unconstitutional statute retroactively.  Instead, the most logical interpretation of footnote 12 is that closed cases need not be re-opened and liability re-adjudicated. The footnote does not pave the way to make a statute that was unconstitutional at the time of the acts in question enforceable.  *See, e.g. Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *12 (rejecting the argument that footnote 12 changes the retroactivity analysis); *Creasy*, 2020 U.S. Dist. LEXIS 177798, at *9 n.4 (noting that footnote 12 does not change the fact that the automated-call restriction cannot apply retroactively).

### 3. Applying the automated-call restriction to the calls at issue would lead to the same constitutional problems that AAPC was designed to avoid.

Prospective only application of the newly-cured automated-call restriction is consistent with the constitutional principles above and also avoids other serious constitutional problems that would arise from retroactive application.  There is no dispute that the Supreme Court invalidated the government-debt exception in *AAPC*.  *AAPC*, 140 S.Ct. at 2343 ("[S]even Members of the Court conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute.").  Given this decision, the plurality recognized in footnote 12 (albeit, in dicta) that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate."  *Id.* at n.12.  Effectively, the plurality recognized in footnote 12 that a government-debt collector could not be held liable for robocalls made during the relevant time period because those calls were permissible under a now-invalidated provision.

If, however, a non-government debt collector could be liable for alleged robocalls during that same time period, that outcome would lead to the precise unequal treatment that the Supreme Court sought to avoid in *AAPC*. The plurality recognized that the automated-call restriction, as written, could not pass constitutional muster if it regulated robocalls based on the content of the communications. *Id.* at 2347. If the Court were to hold Defendants potentially liable for alleged calls between 2015 and the date of the Court's decision in *AAPC*, it would be doing precisely what *AAPC* prohibits – *holding parties to different standards of liability based on the content of the calls*. Indeed, Justice Gorsuch cautioned against such an approach in his dissent, stating that "a holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up *endorsing the very same kind of content discrimination* we are seeking to eliminate." *Id.* at 2366 (Gorsuch, J., dissenting) (emphasis added). *See also Lindenbaum*, 2020 U.S. Dist. LEXIS 201572, at *18 ("And, to treat [portions of the automated-call restriction] as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns….").

Finding that the automated-call restriction does not apply to calls between 2015 and the ruling in *AAPC* not only makes constitutional sense, it makes practical sense. If the rule were otherwise, one can imagine any number of scenarios in which Congress could enact exceptions to the TCPA – for example to permit one political party to make calls that were prohibited for everyone else (including the other party). After severance of this provision by the Supreme Court, the non-favored political party could still be penalized for violating the pre-severance statute, while the favored political party could not. The result is untenable. Accordingly, the Court should dismiss Count I of Plaintiff's Complaint for lack of subject matter jurisdiction.

## V.    DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Standard governing motions to dismiss for failure to state a claim.

Defendants also move to dismiss Counts II and III for failure to statute a claim under Rule 12(b)(6).  Although a court ruling on a Rule 12(b)(6) motion must assume the facts alleged in the Complaint to be true, it is not proper to assume that a plaintiff can prove facts that he has not alleged.  *Assoc. Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Nor is the Court required to consider unsupported legal conclusions or legal conclusions disguised as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements."  *Collins v. Fischer*, No. 15-cv-103, 2018 U.S. Dist. LEXIS 54722, at *8-9 (S.D.N.Y. Mar. 29, 2018) (quoting *Iqbal*, 556 U.S. at 678).

While the *Iqbal/Twombly* pleading standard "does not require heightened fact pleading specifics, it does require enough facts to nudge a plaintiff's claims across the line from conceivable to plausible."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted).  "Moreover, the tenet that a court must accept as true the allegations contained in a complaint is inapplicable to legal conclusions."  *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 224 (S.D.N.Y. 2018) (quoting *Iqbal*, 556 U.S. at 678).

### B.    Count II fails to state a claim because Plaintiff does not allege conduct within the purview of the regulation.

Plaintiff alleges in Count II of his Complaint that Defendants violated 47 C.F.R. § 64.1200(d).  The plain language of the regulation, however, demonstrates that Plaintiff cannot state a claim for relief.

Section 64.1200(d) applies exclusively to calls made to residential telephone subscribers. The regulation targets entities that "initiate any call for telemarketing purposes to a residential telephone subscriber." 47 C.F.R. § 64.1200(d).  Courts have acknowledged the textual limitations of the regulation and found that a plaintiff must plead that a defendant placed calls to a his or her residential telephone line to state a claim under § 64.1200(d).  *See, e.g., Cunningham v. Politi*, No. 4:18-cv-00362, 2019 U.S. Dist. LEXIS 102449, at \*10-11 (E.D. Tex. Apr. 30, 2019) (finding right of action "limited to redress for violations of the regulations that concern *residential telephone subscribers*") (emphasis added); *recommendation and report adopted,* No. 4;18-cv-362, 2019 U.S. Dist. LEXIS 102054 (E.D. Tex. June 19, 2019).  Plaintiff specifically alleges that the calls at issue in his Complaint were all made to "Plaintiff's cellular phone," not his residential telephone line. (ECF No. 1 at ¶¶ 23, 44.)  Taking all of Plaintiff's allegations as true, the face of the Complaint shows that Plaintiff's allegations do not target conduct that is controlled by the regulation.

Nor does Plaintiff's allegation that his cellular telephone is "for personal, family, and household use" (*id.* at ¶ 44), pull his claims within the scope of the regulation.  As the statute itself distinguishes between calls made to residential and cellular telephone lines, it is clear that both Congress and regulators understood the difference between the two.  Plaintiff cannot shoehorn his claims into the regulation by asking this Court to broaden the definition of "residential" where regulators specifically chose to limit it.  *See, e.g., Allen Oil Co., Inc. v. Comm'r*, 614 F.2d 336, 339 (2d Cir. 1980) ("Normally, a statute must, if reasonably possible, be construed in a way that will give force and effect to each of its provisions rather than render some of them meaningless.").

Plaintiff has raised this precise argument before numerous courts, and numerous courts have repeatedly dismissed this claim.  *See, e.g., Politi,* 2019 U.S. Dist. LEXIS 102449, at \*10-11; *Cunningham v. Sunshine Consulting Grp., LLC,* No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709,

at *15-16 (M.D. Tenn. July 20, 2018); *Cunningham v. Rapid Capital Funding, LLC,* No. 3:16-02629, 2017 U.S. Dist. LEXIS 136951, at *7-8 (M.D. Tenn. July 27, 2017); *Cunningham v Spectrum Tax Relief, LLC,* No. 3:16-2283, 2017 U.S. Dist. LEXIS 118797, at *7-8 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA, Inc.,* No. 3:15-0847; 2017 U.S. Dist. LEXIS 97486, at *13-14 (M.D. Tenn. June 23, 2017).

Even putting aside Plaintiff's failure to allege calls made to a residential telephone subscriber, he has not plead any facts suggesting that the conduct at issue in the Complaint is governed by the regulation.  "The regulation relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls."  *Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).  Plaintiff does not, however, allege that he made any affirmative request that Defendants stop calling him or put him on an internal do-not-call list; nor does he allege that he requested a copy of Defendants' do-not-call procedures.  Without such allegations, Plaintiff's Complaint does not show any entitlement to relief under the regulation, either by the letter or the spirit of the law.  Accordingly, Plaintiff has not stated a claim for violation of 47 C.F.R. § 64.1200(d) and his claim must be dismissed with prejudice.

## C. Count III fails to state a claim because it rises and falls with Plaintiff's TCPA claim and Plaintiff fails to plead all elements of the claim.

In Count III, Plaintiff alleges that Defendants violated § 305.053 of the Texas Business and Commerce Code.  This claim, however, does not fare any better than Plaintiff's other two claims, requiring dismissal.

### 1. Count III should be dismissed because it is wholly dependent on Plaintiff's TCPA claim.

A valid TCPA claim is a precursor to a claim under Texas Business and Commerce Code § 305.053.  The statute, termed the "Texas TCPA," provides that a "person who receives a communication that violates [the TCPA] may bring an action against the person who originates

the communication."  As described above, Plaintiff's TCPA claim is not cognizable.  As a result, Plaintiff cannot state a claim under the Texas TCPA, either.

Courts have consistently recognized the inherent limitations in the state statute and found that, where a plaintiff does not have a claim under the TCPA, he or she does not have a claim under its Texas counterpart.  *See, e.g., Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014) ("As Santander did not violate the TCPA, Santander also did not violate related Texas state law claims arising under the Texas Business and Commercial Code § 305.053.  The Texas TCPA proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of the Texas TCPA."); *see also Masters v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA376, 2013 U.S. Dist. LEXIS 101171, at *9-10 (W.D. Tex. July 11, 2013) (noting that "plaintiffs have a choice of forum rather than two separate avenues for recovery" between the TCPA and the Texas TCPA).  Accordingly, because Plaintiff cannot state a claim for violation of the TCPA, his claim for relief under its Texas corollary must also be dismissed.

### 2.    Plaintiff has not pled the elements of a Texas TCPA claim.

Even if Plaintiff could rely on the federal TCPA, his state law claim would still be ripe for dismissal because Plaintiff does not plead that Defendants made telephone calls to him "for the purpose of making a sale."  Section 305.001 of the Texas Business and Commerce Code, which describes the prohibited phone calls covered by the statute, provides that the telephone calls at issue must have a specific purpose:  *for the purpose of making a sale.  See* Tex. Bus. & Comm. Code § 305.001 ("A person may not make a telephone call or use an automatic dial announcing device to make a telephone call *for the purpose of making a sale* . . ..").

Plaintiff has not plead that any calls were made "for the purpose of making a sale."  Nor has Plaintiff plead any facts that would permit the Court to reach that conclusion.  Indeed, Plaintiff

does not describe anything whatsoever about the calls he allegedly received, only that the calls were "not related to any emergency purpose."  (ECF No. 1 at ¶ 23.)  Even putting aside the fact that Plaintiff's inability to plead a TCPA claim dooms his Texas TCPA claim, his failure to plead the necessary elements of the Texas TCPA requires dismissal.

## VI.    CONCLUSION

Defendants On Deck Capital, Inc. and Enova International, Inc., respectfully request that the Court enter an Order dismissing Plaintiff's Complaint and award such further relief as the Court deems appropriate.

DATED this 26th day of February 2021.

> Respectfully submitted,
>
> By: */s/ Stephen J. Steinlight*
> Stephen J. Steinlight
> Troutman Pepper Hamilton Sanders LLP
> 875 Third Avenue
> New York, NY 10022
> Telephone:  (212) 704-6000
> Facsimile:  (202) 704-6288
> Email:  stephen.steinlight@troutman.com
>
> *Counsel for Defendants On Deck Capital, Inc. and Enova International, Inc.*